| | |
|---|---|
| STATE OF MAINE<br>KENNEBEC, ss. | SUPERIOR COURT<br>DOCKET NO. |

ARLENE EDSON,  )
                                      )
           Plaintiff          )      COMPLAINT &
                                      )      REQUEST FOR JURY TRIAL
v.                               )

PAUL L. LEPAGE, RIVERVIEW
PSYCHIATRIC CENTER,
MAINE DEPARTMENT OF HEALTH
AND HUMAN SERVICES, MARY MAYHEW,
MARY LOUISE MCEWEN, JAY HARPER,
WILLIAM LORD, JR., R.N., JAIME MEADER,
R.N., ALEXANDER RAEV, Ph.D.,
JULIA WISE, PA-C,
COLLEEN CUTLER, RN, MICHELLE
PARADIS, DAVID LOVEJOY, KELLY
LAVIGNE, JASON TURNER, JOHN DOE
AND JANE DOE, UNIDENTIFIED
RIVERVIEW EMPLOYEES

          Defendants

NOW COMES Plaintiff Arlene Edson, by and through undersigned counsel, Daniel G. Lilley Law Offices, P.A., and complains and alleges against the Defendants as follows:

## JURISDICTION AND PARTIES

1. Plaintiff Arlene Edson ("Ms. Edson") is a citizen of the United States, who, at all times relevant to this litigation, resided at Riverview Psychiatric Center, Town of Augusta, County of Kennebec, and State of Maine.

2. Defendant Paul L. LePage is a citizen of the United States and the Governor of the State of Maine, who resides in the City of August, County of Kennebec, State of Maine.

3. Defendant Riverview Psychiatric Center ("Riverview") is a State operated Forensic hospital, providing psychiatric services to the correction system and the Maine court system, including care for those committed under the criminal statutes for observation and evaluation, those determined Incompetent to Stand

1

Trial, and those committed to the State as Not Criminally Responsible, located in the City of Augusta, County of Kennebec, and State of Maine.

4. Defendant Maine Department of Health and Human Services ("DHHS") is a State agency.

5. Defendant Mary Mayhew is a citizen of the United States and the Commissioner of DHHS, located in City of Augusta, County of Kennebec, State of Maine.

6. Defendant Mary Louise McEwen is a citizen of the United States and was, at all times relevant to this litigation, the Superintendent of Riverview.

7. Defendant Jay Harper is a citizen of the United States and is presently the Superintendent of Riverview.

8. Defendant William Lord, Jr., R.N. is a citizen of the United States, who, upon information and belief, resides at 57 Innes Ridge Road, Town of Wayne, County of Kennebec, State of Maine, and was at all relevant times to this litigation an employee of Riverview.

9. Defendant Jaime Meader R.N. is a citizen of the United States and was, at all relevant times to this litigation an employee of Riverview.

10. Defendant Alexander Raev Ph.D. is a citizen of the United States and was, at all relevant times to this litigation an employee of Riverview.

11. Defendant Julia Wise, PA-C is a citizen of the United States and was, at all relevant times an employee of Riverview.

12. Defendant Colleen Cutler, R.N., is a citizen of the United States and was, at all relevant times an employee of Riverview.

13. Defendant Michelle Paradis is a citizen of the United States and was, at all relevant times an employee of Riverview.

14. Defendant David Lovejoy is a citizen of the United States and was, at all relevant times an employee of Riverview.

15. Defendant Kelly Lavigne is a citizen of the United States, who, upon information and belief was

2

employed as a correctional officer by the Maine Department of Corrections located in the City of Augusta, County of Kennebec, and under contract to work for Riverview, during all times relevant to this litigation.

16. Defendant Jason Turner is a citizen of the United States, who, upon information and belief was employed as a correctional officer by the Maine Department of Corrections, located in the City of Augusta, County of Kennebec, and under contract to work for Riverview, during all times relevant to this litigation.

17. Defendants John Doe and Jane Doe are other Riverview employees who have not yet been identified.

18. This Court has proper personal jurisdiction over the parties pursuant to general jurisdiction, 4 M.R.S. §105, 5 M.R.S. §4682, the Maine Tort Claims Act 14 M.R.S. §8106, and 42 U.S.C. §1983.

19. Venue is proper pursuant to 14 M.R.S. §501.

## FACTS

20. Since 1990, Riverview has been operating under a Consent Decree and incorporated Settlement Agreement ("Consent Decree"), a copy of which is attached hereto as Exhibit One and incorporated herein by reference.

21. The Consent Decree was grounded in allegations that Augusta Mental Health Institute ("AMHI"), now known as Riverview, had failed to meet certain constitutional, statutory, and regulatory standards which deprived patients of fundamental rights, including freedom from restraint and freedom from abuse.

22. The Consent Decree is a contract between DHHS and class members, *i.e.* all individuals admitted to AMHI and/or Riverview on or after January 1, 1988.

23. Due to her mental illness, Ms. Edson has been involuntarily committed to Riverview since a court finding in 2011 that she was not criminally responsible for charges of arson and assault.

24. Ms. Edson is a member of the protected class of individuals, pursuant to the Consent Decree.

25. Upon information and belief, Riverview is a Medicaid and/or Medicare participating hospital that has accepted Federal funds.

26. Following two highly publicized incidents of client abuse and a subsequent investigation which found multiple categories of failures in meeting certain constitutional, statutory, and regulatory standards,

3

Riverview was decertified by the Centers for Medicare and Medicaid Services on or about September 2, 2013 for failure to comply substantially with Title XVIII of the Social Security Act and implementing regulations of the Secretary of Health and Human Services specified at 42 C.F.R. Part 482, Conditions of Participations for Hospitals.

27. Following a period of approximately two years during which Riverview operated without Court supervision under the Consent Decree, on or about October 25, 2013, active Court supervision was reinstated.

28. A special relationship existed between Ms. Edson and Defendants as a result of her being required by law to be in the physical custody of Riverview.

29. As a result of the special relationship, Defendants had a duty to control the conduct of third persons to prevent them from causing harm to Ms. Edson.

30. On the evening of December 2, 2013, Defendant Mary Mayhew was the Commissioner of the Department of Health and Human Services.

31. On the evening of December 2, 2013, Defendant Mary Louise McEwen was the Superintendent of Riverview Psychiatric Center.

32. On December 2, 2013, Ms. Edson was a forensic patient at Riverview Psychiatric Center, housed in the Lower Saco Unit.

33. Riverview utilized the so-called Lower Saco Unit of the hospital to house its forensic patients, which included Ms. Edson.

34. On the evening of December 2, 2013, Defendant William Lord Jr. was the Registered Nurse and the Nurse on Duty in the Lower Saco Unit.

35. On the evening of December 2, 2013, Defendants Correctional Officers Lavigne and Turner were working at Riverview in the Lower Saco Unit, pursuant to a contract between Riverview and/or DHHS and Maine Department of Corrections.

36. Defendants Correctional Officers Lavigne and Turner wore video camera recording devices during

4

their shift on December 2, 2013.

37. On or about December 2, 2013, Riverview had surveillance video cameras which recorded the hall and nurses' station in the Lower Saco Unit.

38. On December 2, 2013 at approximately 20:51 hours, Ms. Edson came out of a bathroom and walked into a conference room.

39. On December 2, 2013, as Ms. Edson walked into the conference room, she was followed by a correctional officer, but no clinical staff.

40. On December 2, 2013, Ms. Edson asked to be left alone, however the correctional officer challenged her about a comment she made earlier in the evening.

41. On December 2, 2013, Ms. Edson left the conference room and began to undress and removed her clothing as she walked back to her room.

42. On December 2, 2013, Defendant Lord then stated to Ms. Edson: "I'll go with a three-strike rule basically, if we gotta do that."

43. On December 2, 2013, Ms. Edson appeared to toss her clothing out of the door into the hallway.

44. On December 2, 2013, Defendant Lord and three other Riverview employees were at the nurses' station and observed the clothing being tossed into the hallway.

45. On December 2, 2013, a correctional officer picked up Ms. Edson's clothing and returned it to the doorway of her room, at which point it appeared that Ms. Edson kicked the clothing back into the hallway.

46. On December 2, 2013, a correctional officer picked up Ms. Edson's clothing and removed it from the hallway, out of the view of the camera.

47. On December 2, 2013, at 20:58 hours, Ms. Edson stood naked in her room with her back against the wall and shoulders hunched forward.

48. On December 2, 2013, while standing naked in her room, with her back against the wall and shoulders hunched forward, Ms. Edson displayed no evidence of assaultive behavior, violent behavior, or aggression.

5

49. On December 2, 2013, a correctional officer, without provocation from Ms. Edson, deployed pepper spray on Ms. Edson which caused her to double over in pain and cough and spit.

50. On December 2, 2013, the other correctional officer then asked staff, "Do you want [Ms. Edson] cuffed?"

51. On December 2, 2013, handcuffs were applied to Ms. Edson, despite no signs of assaultive, violent, or aggressive behavior.

52. On December 2, 2013, a correctional officer ordered Ms. Edson to get up to go to the five-point restraints, at which time Ms. Edson stated that she "can't breathe" and requested a shower to remove the pepper spray.

53. On December 2, 2013, Ms. Edson's pleas were ignored and she was wrapped in a sheet and taken to a five-point restraint in another room, where she was positioned by staff and correctional officers onto her back and restrained.

54. On December 2, 2013, while restrained, Ms. Edson notified staff that the pepper spray was running down her nose.

55. On December 2, 2013, Ms. Edson begged for a shower to remove the pepper spray.

56. On December 2, 2013, during the time Ms. Edson begged for a shower, a male staff member could be heard on the recording coughing from exposure to the pepper spray.

57. On December 2, 2013, at 21:04 hours, video showed that Ms. Edson continued to beg for a shower and requested that someone speak with the nurse.

58. Meanwhile, a mental health worker was observed on the video wiping his or her face off with a wash cloth.

59. On December 2, 2013, Defendant Lord talked on the telephone and stood at the nurse's station for approximately 15 minutes following the deployment of pepper spray on Ms. Edson.

60. On December 2, 2013, Ms. Edson continued to beg, cough and whimper.

61. On December 2, 2013, Ms. Edson requested a blanket and some water, but received neither.

6

62. On December 2, 2013, at 21:18 hours video showed that Ms. Edson continued to be restrained and continued to request the nurse.

63. On December 2, 2013, Ms. Edson stated that her side was burning and requested the Nurse on Duty.

64. On December 2, 2013, in response to Ms. Edson's statement that her side was burning, Staff replied, "if it was burning that bad, you would know what to do to get out of here, but you aren't."

65. On December 2, 2013, following Ms. Edson's statement that her side was burning, Staff left.

66. On December 2, 2013, Ms. Edson remained restrained in the presence of the correctional officers.

67. Throughout the video, Ms. Edson remained passive and cooperative.

68. Following Ms. Edson being pepper sprayed on December 2, 2013, the first interaction between Ms. Edson and a nurse took place at 23:50 hours, almost three hours after she was pepper-sprayed.

69. The nurse discussed boundaries with Ms. Edson, released her from the restraints and finally allowed her to take a shower.

70. On December 2, 2013 Ms. Edson was tortured for approximately three hours and suffered extreme physical and mental pain, humiliation, and suffering from being pepper-sprayed and physically restrained without cause or provocation.

71. On December 2, 2013, Ms. Edson was tortured for approximately three hours and suffered extreme physical and mental pain, humiliation, and suffering from being pepper-sprayed and physically restrained while staff ignored her pleas for help, assistance, or to be treated with basic human dignity.

72. On or about December 2, 2013, Riverview's policy on the use of restraints stated that physical "[r]estraint will be used only when there exists an imminent risk of danger to the individual or others and no other safe and effective intervention is possible."

73. On or about December 2, 2013, Riverview policy defined "imminent threat" as "making verbal threats to harm, posturing to physically harm, brandishing an item that could be used as a weapon, concealing a weapon that they are refusing to surrender, taking a hostage, holding an item to themselves and threatening to harm themselves or others, or attempting to escape."

7

74. On December 2, 2013, immediately prior to being pepper-sprayed, Ms. Edson displayed no behaviors which met the criteria for "imminent threat."

75. On or about December 2, 2013, Riverview's policy on the use of restraints further stated: "[l]aw enforcement restraints will never be used for the purposes of discipline, coercion, active treatment, staff convenience or as a replacement for adequate levels of staff."

76. On or about December 2, 2013, Riverview's policy mandated that allegations of client mistreatment, including abuse, neglect, or exploitation, defining abuse as "the infliction of injury, unreasonable confinement, intimidation or cruel punishment that causes, or is likely to cause, physical harm or pain or mental anguish, sexual abuse or sexual exploitation" be reported.

77. On or about December 2, 2013, pursuant to Riverview's policy, staff was responsible to "tak[e] action to protect clients from abuse" and "[i]mmediately report[] abuse . . . which they have witnessed or have knowledge of."

78. On or about December 2, 2013, Riverview's Documentation Standards and Requirements' Protocol and Procedure stated: "[a]ccurate, detailed documentation shows the extent and quality of care provided, the outcome of that care and the treatment and education that the client still needs."

79. Defendants actively concealed the abuse to Ms. Edson.

80. Defendants failed to follow the law, policies, guidelines, protocols and Consent Decree in regard to the events leading up to, including and following the abuse to Ms. Edson.

81. Defendants completed false and misleading paperwork and filed false and misleading reports in regard to the events leading up to, including and following the abuse to Ms. Edson.

82. The December 2, 2013 nursing note falsely stated that Ms. Edson was "unable to de-escalate with multiple attempts . . . began banging head and kicking, hitting walls. [Correctional Officer's] intervened as client was kicking holes and picking shards of wall, warned client several times."

83. Ms. Edson did not bang her head, kick or hit the walls, display any threatening behavior, or put a hole in the wall of her room during this incident.

8

84. In her December 2, 2013 Medical Staff Restraint and SRC Progress Note, authored by Julia Wise, PA-C, stated that at 21:00 Ms. Edson "was maced, put back in restraints, see CO/Nursing notes for more details."

85. The December 2, 2013 nursing note failed to document the use of pepper spray being deployed.

86. Riverview Psychiatric Center Incident Report #5255, dated December 2, 2013 and signed by Defendant Lord, at 21:00 stated: "Client cont'd banging, kicking, property destruction despite several attempts to redirect and deescalate verbally . . . CO's Lavigne/Taylor intervened, gave the client several warnings to gain control of behavior . . . Client sprayed by CO - behavior ceased immediately - staff/patient [without] injury."

87. On or about December 2, 2013, Riverview's Seclusion and Restraint Events policy stated: "[s]eclusion and restraints are considered emergency measures or interventions of last resort to protect clients in imminent danger of harming him/herself or others . . . seclusion and restraint will be used only when there exists an imminent risk of danger to the individual or others and no other safe and effective intervention is possible."

88. Ms. Edson was placed into 5-point restraints after deployment of pepper spray despite there being no imminent danger of harm to herself or others.

89. On or about December 2, 2013, Riverview's Seclusion and Restraint Events policy required a physician, physician assistant, or nurse practitioner to evaluate the client within 30 minutes of the initiation of restraint and to document the findings of the evaluation in a progress note.

90. There was no documentation of a physical exam following the utilization of pepper-spray on Ms. Edson.

91. Maine law required Defendants to immediately report the abuse to Ms. Edson to the Department of Health and Human Services.

92. The abuse to Ms. Edson was not reported to the State of Maine's Adult Protective Services until February 27, 2014. See Jeanne Carroll, Preliminary Statement of Whistleblower Protection Act Violation, a

9

copy of which is attached hereto as Exhibit Two and incorporated herein by reference.

93. Between February 27, 2014 and March 10, 2014 on-site licensure complaint investigation was conducted, #ME00015398, by Thomas Woodman, RN, HSC II and Alelia Hilt-Lash, RN, BSN, MBA, HSS.

94. The on-site licensure complaint investigation #ME00015398 substantiated the complaint for abuse and inappropriate utilization of restraints on Ms. Edson, a copy of which is attached hereto as Exhibit Three and incorporated herein by reference.

95. Ms. Edson was unnecessarily and unreasonably secluded while she was a Riverview patient.

96. Ms. Edson was unnecessarily and unreasonably restrained while she was a Riverview patient.

97. Ms. Edson was unnecessarily and unreasonably pepper sprayed while she was a Riverview patient.

98. Because Defendants failed to abide by the terms of the Consent Decree and Maine law, Ms. Edson was denied humane care and treatment.

99. Defendants failed to protect Ms. Edson from physical and psychological abuse while she was a Riverview patient.

100. Defendants failed to report Ms. Edson's abuse to DHHS.

## COUNT I: VIOLATION OF FOURTH AMENDMENT OF U.S CONSTITUTION: §1983 - EXCESSIVE FORCE

101. Ms. Edson repeats and reasserts each and every allegation of paragraphs 1 through 100 as if fully set forth herein.

102. The Fourth Amendment of the United States Constitution protects citizens against the use of excessive force by guaranteeing that all people shall "be secure in their person . . . against unreasonable seizures."

103. Title 42 U.S.C. §1983 provides for a cause of action against any person who, acting under color of law, deprives an individual of any rights, privileges, or immunities secured by the Constitution and laws of the United States.

104. The right of citizens to be free from the use of excessive force is an established right.

10

105. Defendants are cognizant of this right to be free from the use of excessive force.

106. By virtue of the foregoing, the conduct of Defendants, who were acting under color of state law, violated Ms. Edson's rights as established by the Fourth Amendment to the United States Constitution.

107. Defendants' actions in using excessive force exceeded the scope of their discretion.

108. As a result of Defendants' violations of Ms. Edson's constitutional rights, Ms. Edson has suffered physical injury, emotional distress, and other damages for which she seeks compensation.

## COUNT II: VIOLATION OF FOURTH AMENDMENT OF U.S CONSTITUTION: §1983 - RIGHT TO FREEDOM FROM UNREASONABLE BODILY RESTRAINT

109. Ms. Edson repeats and reasserts each and every allegation of paragraphs 1 through 108 as if fully set forth herein.

110. The Fourth Amendment of the United States Constitution protects citizens by guaranteeing that all people shall "be secure in their person . . . against unreasonable seizures."

111. Title 42 U.S.C. §1983 provides for a cause of action against any person who, acting under color of law, deprives an individual of any rights, privileges, or immunities secured by the Constitution and laws of the United States.

112. The right of citizens to be free from unreasonable bodily restraint is an established right.

113. Defendants are cognizant of this right to be free from unreasonable bodily restraint.

114. By virtue of the foregoing, the conduct of Defendants, who were acting under color of state law, violated Ms. Edson's rights as established by the Fourth Amendment to the United States Constitution.

115. Defendants' actions in unreasonably restraining Ms. Edson exceeded the scope of their discretion.

116. As a result of Defendants' violations of Ms. Edson's constitutional rights, Ms. Edson has suffered physical injury, emotional distress, and other damages for which she seeks compensation.

## COUNT III: VIOLATION OF FOURTH AMENDMENT OF U.S CONSTITUTION: §1983- FAILURE TO INTERVENE

117. Ms. Edson repeats and reasserts each and every allegation of paragraphs 1 through 116 as if fully set forth herein.

118. Defendant Correctional Officers and Riverview Employees have an affirmative duty to intervene on behalf of Ms. Edson when they observe an officer or mental health worker violating the constitutional rights of an individual in their presence.

119. Defendant Correctional Officer and Riverview Employees who observed, but did not deploy, the use of excessive force and restraints against Ms. Edson, are liable for the actions of the officer or mental health worker that violated the civil rights of Ms. Edson.

120. The threat and deployment of pepper spray against Ms. Edson under the facts and circumstances that existed at the time of the incident was a clear violation of Ms. Edson's constitutional rights.

121. The unreasonable bodily restraint of Ms. Edson under the facts and circumstances that existed at the time of the incident was a clear violation of Ms. Edson's constitutional rights.

122. Defendant Correctional Officer and Riverview employees who observed the use of excessive force and unreasonable bodily restraints against Ms. Edson had the time and opportunity to intervene prior to the use of excessive force or bodily restraints.

123. Defendant Correctional Officer and Riverview Employees who observed the use of excessive force and unreasonable bodily restraints against Ms. Edson made a deliberate choice not to make a reasonable attempt to stop the use of excessive force.

124. As a proximate result of the violation of Ms. Edson's constitutional rights, Ms. Edson has suffered emotional distress, physical injury, and other damages for which she seeks compensation.

## COUNT IV: VIOLATION OF FOURTEENTH AMENDMENT OF U.S. CONSTITUTION: §1983 - FAILURE TO TRAIN EMPLOYEES

125. Ms. Edson repeats and reasserts each and every allegation of paragraphs 1 through 124 as if fully set forth herein.

126. Defendants have a duty to protect the rights of the citizens and patients that its law enforcement officers come into contact with.

127. Defendants' placement of law enforcement officers into Riverview placed them in direct contact with vulnerable and mentally ill at-risk patients.

128. Defendants' failure to train its employees, including law enforcement officers, on how to deal with, interact, and protect persons who are mentally ill was a deliberate and/or conscious choice evidencing a state policy.

129. The need for more, or different training on how to deal with, interact, and protect persons who are mentally ill and/or are experiencing a mental health crisis is obvious and the inadequacy of the training was so likely to result in a violation of constitutional rights that the Defendants were deliberately indifferent to the need for more or different training.

130. Defendants' deficient training led to the failure to protect Ms. Edson's constitutional rights.

131. As a proximate result of the breach of duties owed by Defendants to Ms. Edson, Ms. Edson has suffered emotional distress, physical injury, and other damages for which she seeks compensation.

## COUNT V: VIOLATION OF 42 U.S.C. § 12132 AMERICANS WITH DISABILITIES ACT

132. Ms. Edson repeats and reasserts each and every allegation of paragraphs 1 through 131 as if fully set forth herein.

133. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

134. Ms. Edson was a qualified individual with a disability due to a severe mental impairment, suffering from, *inter alia*, depression and PTSD which substantially limits her in one or more major life activities, including sleeping, concentrating, thinking, and/or caring for herself.

135. Ms. Edson was discriminated against by Defendants in violation of the ADA because she was regarded as a qualified individual with a disability due to an impairment.

13

136. Ms. Edson was denied proper protection and fair treatment by the Defendants.

137. Ms. Edson was excluded from participation in, and/or denied the benefits of the services, programs, or activities of the defendants, which are available to individuals suffering from mental health disabilities.

138. Ms. Edson was denied said protection and fair treatment due to her mental disabilities, or because she was regarded as a qualified individual with a disability

139. Defendants' acted with deliberate indifference and/or discriminatory animus with regard to Ms. Edson.

140. As a proximate result of the violation of Ms. Edson's rights under the ADA, Ms. Edson has suffered emotional distress, physical injury, and other damages for which she seeks compensation.

## COUNT VI: VIOLATION OF FOURTEENTH AMENDMENT OF U.S. CONSTITUTION: §1983: EQUAL PROTECTION

141. Ms. Edson repeats and reasserts each and every allegation of Paragraphs 1 through 140 as if fully set forth herein.

142. The Fourteenth Amendment to the U.S. Constitution provides, in pertinent part, that "...no state shall...deny to any person within its jurisdiction the equal protection of the laws."

143. Ms. Edson was similarly situated to other individuals, *i.e.* class members, residing at Riverview.

144. Upon information and belief, the similarly situated class members were not unreasonably restrained while patients at Riverview.

145. Upon information and belief, the similarly situated class members were not unreasonably secluded while patients at Riverview.

146. Upon information and belief, the similarly situated class members were not pepper sprayed or otherwise abused while patients at Riverview.

147. Defendants have no rational basis to explain the difference in treatment of Ms. Edson on or

14

about December 2, 2013, as compared to others similarly situated.

148. As a proximate result of the violation of Ms. Edson's constitutional rights, Ms. Edson has suffered emotional distress, physical injury, and other damages for which she seeks compensation.

## COUNT VII: VIOLATION OF MAINE CIVIL RIGHTS ACT

149. Ms. Edson repeats and reasserts each and every allegation of paragraphs 1 through 148 as if fully set forth herein.

150. By virtue of the foregoing, the conduct of Defendants violated Ms. Edson's rights as established by the Fourth Amendment to the United States Constitution and Maine law.

151. By virtue of the foregoing, the conduct of Defendants violated Ms. Edson's right to be free from the use of excessive force and unreasonable bodily restraint as established by Article I, Section 5 of the Maine Constitution and Maine law.

152. Defendants intentionally interfered with Ms. Edson's rights under the Maine and United States Constitutions and Maine law by the threats of, and the use of, physical force and violence against her and the use of unreasonable bodily restraints.

153. As a proximate result of the violation of Ms. Edson's constitutional rights, Ms. Edson has suffered emotional distress, physical injury, and other damages for which she seeks compensation.

## COUNT VIII: NEGLIGENCE - FAILURE TO PROTECT

154. Ms. Edson repeats and reasserts each and every allegation of paragraphs 1 through 153 as if fully set forth herein.

155. Defendants owed Ms. Edson a duty of protection as a result of her being confined on the premises of Riverview.

156. Defendants breached this duty by, among other things, failing to exercise reasonable care, including but not limited to, failure to follow protocols for and the unreasonable use of restraints, failure to operate a safe premises within which it had confined Ms. Edson, inappropriate use of pepper spray, failure to

15

protect Ms. Edson from the threat and use of excessive force, and the failure to provide timely medical care and attention following the use of pepper spray.

157. Defendants acted recklessly or with callous disregard or deliberate indifference, in failing to take adequate steps to protect Ms. Edson while confining her, in failing to adequately or reasonably provide care and medical attention to Ms. Edson following the use of pepper spray, and failing to protect Ms. Edson from the threat and use of excessive force and unreasonable bodily restraints against her.

158. Defendants were in control of the scene at the time of the incident.

159. Defendants observed the risk and use of excessive force and bodily restraints.

160. Defendants had a realistic opportunity to prevent the use of excessive force and unreasonable use of bodily restraints.

161. Defendants had enough time to prevent the use of excessive force and unreasonable use of bodily restraints.

162. Defendants further failed to protect Ms. Edson by failing to report the abuse to Ms. Edson in accordance with Maine State law and Riverview policies.

163. As a proximate result of the breach of duties owed by defendants to Ms. Edson, Ms. Edson has suffered emotional distress, physical injury, and other damages for which she seeks compensation.

## COUNT IX: NEGLIGENT SUPERVISION

164. Ms. Edson repeats and reasserts each and every allegation of paragraphs 1 through 163 as if fully set forth herein.

165. Ms. Edson had been committed to Riverview since a court finding in 2011 that she was not criminally responsible for charges of arson and assault due to her mental illness.

166. A special relationship existed between Ms. Edson and Defendants as a result of her being required by law to be in the physical custody and under the protection of Riverview.

167. As a result of the special relationship, Defendants had a duty to control the conduct of third persons to prevent them from causing harm to Ms. Edson, or conducting themselves so as to create a risk of

16

bodily harm.

168. The actions of third parties and Defendant employees were foreseeable to Defendants as, among other reasons, Riverview was put on notice as to its deficiencies by the Centers for Medicare and Medicaid Services investigation and subsequent decertification on September 2, 2013 and by being returned to active court supervision on October 25, 2013 for failing to meet the terms of the Consent Decree.

169. Defendants knew, or should have known, of the necessity and opportunity for exercising control of third parties.

170. As a proximate result of the breach of duties owed by Defendants to Ms. Edson, Ms. Edson has suffered emotional distress, physical injury, and other damages for which she seeks compensation.

## COUNT X: ASSAULT

171. Ms. Edson repeats and reasserts each and every allegation of paragraphs 1 through 170 as if fully set forth herein.

172. Defendants knew Ms. Edson was a vulnerable patient suffering from a mental illness.

173. Defendants' response to Ms. Edson's actions were intended to cause her to feel an apprehension of an imminent harmful or offensive contact.

174. Defendants responded to Ms. Edson's actions by, among other displays of force, using correctional officers to maintain order in a medical setting, making no attempt to use any non-aggressive or non-confrontational communications, failing to follow protocols or training on dealing with mentally ill individuals, threatening the use of pepper-spray, and threatening the use of physical restraints.

175. Ms. Edson was, in fact, put into apprehension of an imminent harmful or offensive contact.

176. As a proximate result of Defendants' assault, Ms. Edson suffered emotional distress and other damages for which Ms. Edson seeks compensation.

## COUNT XI: BATTERY

177. Ms. Edson repeats and reasserts each and every allegation of paragraphs 1 through 176 as if fully set forth herein.

17

178.  Defendants intended to cause a harmful or offensive contact with the person of Ms. Edson, or an imminent apprehension of such a contact.

179.  Defendants made an offensive contact with the person of Ms. Edson through the use of pepper-spray and the use of physical restraints.

180.  As a proximate result of Defendants' battery, Ms. Edson suffered emotional distress and other damages for which Ms. Edson seeks compensation.

### COUNT XII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

181.  Ms. Edson repeats and reasserts each and every allegation of paragraphs 1 through 180 as if fully set forth herein.

182.  Defendants failed to follow protocol and training, and intentionally and recklessly escalated the incident on December 2, 2013 such that it was certain, or substantially certain, that emotional distress to Ms. Edson would result from such conduct.

183.  The conduct of the Defendants in needlessly and recklessly escalating the situation to a confrontation deploying pepper-spray and the use of physical restraints, without caring for or allowing reasonable care and medical attention for over three hours, failing to follow protocol and training, failing to document and report the incident and falsifying documentation, and leaving Ms. Edson vulnerable and crying out and begging for assistance, was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community.

184.  Defendants' actions created the danger that caused Ms. Edson's emotional distress.

185.  The emotional distress Ms. Edson suffered was so severe that no reasonable person could be expected to endure it.

186.  As a proximate result of Defendants' Intentional Infliction of Emotional Distress, Ms. Edson suffered emotional distress and other damages for which she seeks compensation.

### COUNT XIII: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

187.  Ms. Edson repeats and reasserts each and every allegation of paragraphs 1 through 186 as if

18

fully set forth herein.

188. Defendants owed Ms. Edson a duty of protection and assistance, because Ms. Edson was required by law to be in the physical custody and under the protection of Riverview

189. Defendants breached their duties to Ms. Edson by needlessly and recklessly escalating the situation to a confrontation deploying pepper-spray and the use of physical restraints, without caring for or allowing reasonable care and medical attention for over three hours, failing to follow protocol and training, failing to document and report the incident and falsifying documentation, failing to report Ms. Edson's abuse and leaving Ms. Edson vulnerable and crying out and begging for assistance.

190. Defendants' breach of their duties to Ms. Edson caused serious mental harm to Ms. Edson.

191. As a direct and proximate result of Defendants' Negligent Infliction of Emotional Distress, Ms. Edson suffered pecuniary losses, emotional distress and other damages for which she seeks compensation.

## COUNT XIV: BREACH OF CONTRACT

192. Ms. Edson repeats and reasserts each and every allegation of paragraphs 1 through 191 as if fully set forth herein.

193. Defendants have failed to meet its obligations set forth in the Consent Decree.

194. On or about December 2, 2013, Defendants breached Section IX (H)(1) of the Consent Decree by unreasonably secluding Ms. Edson.

195. On or about December 2, 2013, Defendants breached Section IX (H)(2) of the Consent Decree by unreasonably restraining Ms. Edson.

196. On or about December 2, 2013, Defendants breached Section IX (I) of the Consent Decree by failing to immediately reporting the abuse of Ms. Edson.

197. On or about December 2, 2013, Defendants breached Section IX (I) of the Consent Decree by failing to immediately investigate the abuse of Ms. Edson.

198. Ms. Edson has suffered damages as a result of Defendants' breach of the Consent Decree.

19

## JURY TRIAL REQUEST

199.   Ms. Edson requests a trial by jury.

WHEREFORE Ms. Edson prays for judgment against each and every Defendant, individually, and in their official capacities, on each and every count in an amount that reasonably compensates her for all damages, together with punitive damages, interest, costs, and an award of reasonable attorney fees and other litigation costs incurred in bringing this action pursuant to 42 U.S.C § 1983 and/or 5 M.R.S. §4683, to the highest extent allowable by law, from the earliest date allowable by law, for injunctive relief, and grant such further relief as the Court may deem just and proper.

DATED at Portland, Maine, this 30th day of November, 2015.

Daniel G. Lilley, Esq., Bar No. 1870

Amber L. Tucker, Bar No. 4472

Attorneys for Plaintiff
DANIEL G. LILLEY LAW OFFICES, P.A.
39 Portland Pier
P.O. Box 4803
Portland, ME  04112-4803
(207) 774-6206